# EXHIBIT "1"



## ORIENT EXPRESS CONTAINER CO.,LTD.

WEBSITE: WWW.OECGROUP.COM

**BILL OF LADING No.    OERT668702K00062**

**TELEX RELEASE**

SO Number : ISO-JFKOEK00062          Booking No.: 175076

| SHIPPER | FOR DELIVERY OF GOODS PLEASE APPLY TO |
|---|---|
| Industria Mexicana de Sabores, S.A. de C.V.<br>Km 75 carretera Pozarica- Tampico<br>Veracruz, Alamo Temapache CP 92730<br>RFC IMS02080728A<br>Alamo Temapache, VE 92740, MEXICO<br>TEL : 9   FAX 64 (1 100) | OEC Group New York<br>One Cross Island Plaza<br>133-33 Brookville Blvd., Ste. 306<br>Rosedale, NY 11422 MEXICO<br>TEL : 718-527-7171 |

CONSIGNEE    ( This B/L is not negotiable unless marked "To Order" or "To Order of.. " here.)

Citrosuco North America, Inc.
5937 Highway 60 East
Lake Wales, Florida 33898
Tel: (863) 696 7400
Tax ID # : 51-0272828
Lake Wales, 33898, USA

EXPORT REFERENCES

NOTIFY PARTY    (No responsibility shall attach to Carrier or to his Agent for failure to notify)

Citrosuco North America, Inc.
5937 Highway 60 East
Lake Wales, Florida 33898
Tel: (863) 696 7400
Tax ID # : 51-0272828
Lake Wales, 33898, USA
TEL :(863) 696 6070

FORWARDING AGENT REFERENCES

POINT AND COUNTRY OF ORIGIN OF GOODS

| VESSEL AND VOYAGE NO. | PLACE OF RECEIPT | PORT OF LOADING |
|---|---|---|
| ARSOS 009N | ALAMO TEMAPACHE | TUXPAN |

| PORT OF DISCHARGE | PLACE OF DELIVERY | NUMBER OF ORIGINALS |
|---|---|---|
| PT MANATEE | PT MANATEE | THREE(3) |

PARTICULARS FURNISHED BY THE SHIPPER          - NOT CHECKED BY CARRIER          - CARRIER NOT RESPONSIBLE    (see Clause 7)

| MARKS AND NUMBERS | NUMBER OF PACKAGES | DESCRIPTION OF Goods | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | 10 ISO TANKS | ASEPTIC PASTEURIZED ORANGE JUICE<br><br>Container No/Seal No<br>EURU1347545/0001046-0001045<br>EURU1348460/B82638-B82637<br>EURU1348310/0002952-0002951<br>EURU1349419/0002953-0002955<br>EURU1346805/TAC262821-TAC262822<br>EURU1348618/0001474-0001473<br>EURU1347226/0002987-0002988<br>EURU1346852/0001485-0001486<br>EURU1347062/TAC262825-TAC262826<br>EURU1347205/0001499-0001500<br>"FREIGHT PREPAID"<br><br>TYPE OF MOVE:   DOOR/DOOR | 244489.93 KGS<br><br><br><br><br><br><br>MARCH 21, 2021<br><br>ARSOS 009N<br>TUXPAN | 0.000 CBM |

THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.

TOTAL NUMBER OF PACKAGES:
limitation of liability ( if applicable ):
( See Clause 20 )

CARRIER'S RECEIPT: Total No. of packages received and acknowledged by carrier for the purpose of calculation of package

Charges including Freight: Cargo shall not be delivered unless Charges are paid (see Clause 17)

| FREIGHT & CHARGES | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| **Freight Prepaid As Arranged.** | | | | |

RECEIVED for shipment as specified above in apparent good order and condition unless otherwise stated.  The Goods to be delivered at above mentioned Port of Discharge or Place of Delivery, whichever applies, SUBJECT TO Terms and Contained on reverse side hereof, to which Merchant agrees by accepting this Bill of Lading

IN WITNESS WHEREOF original Bills of Lading this side have been signed, one of which being accomplished, the others to stand void, unless applicable law provides otherwise.

**ORIENT EXPRESS CONTAINER CO., LTD.**

| DECLARED VALUE FOR OCEAN TRANSPORTATION<br>(Only applicable if declared value charges paid - see Clause 20 ) | DECLARED VALUE FOR INLAND TRANSPORTATION<br>(Only applicable if declared value charges paid - see Clause 20 ) | AGENT FOR THE CARRIER |
|---|---|---|
| PLACE AND DATE OF ISSUE<br>Guadalajara, Mexico    Mar-21-2021 | SHIPPED ON BOARD DATE<br>3/21/2021 | AS AGENT FOR,THE CARRIER, |

**BL Rider**

BL #   OERT668702K00062

| CONTAINER | EXTRA SEALS |
|-----------|-------------|
| EURU1347545 | 0001041-0001044-0001042-0001043 |
| EURU1348460 | B82633-B82636-B82634-B82635 |
| EURU1348310 | 0001047-0001050-0001049-0001048 |
| EURU1349419 | 0002958-0002957-0002959-0002960 |
| EURU1346805 | 0001032-0001031-0001033-0001034 |
| EURU1348618 | 0001040-0001471-0001472-0001039 |
| EURU1347226 | 0002986-0002984-0002985-0002983 |
| EURU1346852 | 0001487-0001488-0001489-0001490 |
| EURU1347062 | 0001482-0001483-0001484-0001481 |
| EURU1347205 | 0001498-0001497-0002982 |

## TERMS AND CONDITIONS

### 1. DEFINITION.

a) "Carriage" means the whole of the operations and services undertaken or performed by or on behalf of the Carrier with respect to the Goods.

b) "Carrier" means the Company named on the face side hereof which is a non-vessel operating common carrier, and on whose behalf this Bill of Lading was issued, whether acting as carrier or bailee.

c) "Charges" means freight, deadfreight, demurrage and all expenses and money obligations incurred and payable by the Merchant.

d) "Container" means any container (closed or open top), van, trailer, flatbed, transportable tank, railroad car, vehicle, flat, flatrack, pallet, skid, platform, cradle, sling-load or any other article of transport.

e) "Goods" means the cargo received from the shipper and described on the face side hereof and any Container not supplied by or on behalf of the Carrier.

f) "Merchant" means the shipper, consignee, receiver, holder of this Bill of Lading, owner of the cargo or person entitled to the possession of the cargo and their principals and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Charges, and for the performance of the obligations of any of them under this Bill of Lading.

g) "On Board" or similar words endorsed on this Bill of Lading mean that in a Port to Port movement, the Goods have been loaded on board the Vessel or are in the custody of the actual ocean carrier; and in the event of Through Transportation, if the originating carrier is an inland or coastal carrier, means that the Goods have been loaded on board rail cars or another mode of transport at the Place of Receipt or are in the custody of a Participating carrier and en route to the Port of Loading named on the reverse side.

h) "Participating carrier" means any other carrier by water, land or air, performing any state of the Carriage, including inland carriers, whether acting as sub-carrier, connecting carrier, substitute carrier or bailee.

i) "Person" means an individual, a partnership, a body corporate or any other entity of whatsoever nature.

j) "Vessel" means the ocean vessel named on the face side hereof, and any substitute vessel, feedership, barge, or other means of conveyance by water used in whole or in part by the Carrier to fulfill this contract.

## 2. CARRIER'S TARIFFS.

The Goods carried hereunder are subject to all the terms and conditions of the Carrier's applicable tariff(s) on file with a regulatory body whose rules govern all or a particular portion of the Carriage and said terms and conditions are hereby incorporated herein as part of the Terms and Conditions of this Bill of Lading. Copies of the relevant provisions of the applicable tariff(s) are obtainable from the Carrier or regulatory body concerned upon request. In the event of any conflict between the terms and conditions of such tariff(s) and the Terms and Conditions of this Bill of Lading, this Bill of Lading shall prevail.

## 3. WARRANTY/ACKNOWLEDGMENT.

The Merchant warrants that in agreeing to the Terms and Conditions hereof, it is, or is the agent and has the authority of, the owner or person entitled to the possession of the Goods or any person who has a present or future interest in the Goods. The Merchant acknowledges that the Carrier is a non-vessel operating common carrier ("NVOCC"), and that it neither owns nor charters vessels, as a result of which the Carrier or any sub-carrier (which may be an NVOCC) will be required to contract with an actual ocean carrier to accomplish the Carriage contemplated by this Bill of Lading and does so as agent of the Merchant. The Merchant further acknowledges that by identifying the carrying Vessel on the face side hereof, it knows or can determine the name of the actual ocean carrier and the terms and conditions of the actual ocean carrier's bill of lading and applicable tariff(s) and agrees to be bound thereby.

## 4. RESPONSIBILITY.

a) Except where the Carriage covered by this Bill of Lading is to or from a port or locality where there is in force a compulsorily applicable ordinance or statute similar in nature to the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated at Brussels, August 25, 1924, the provisions of which cannot be departed from, and suit is brought in such port or locality, this Bill of Lading shall have effect subject to the Carriage of Goods by Sea Act of the United States (COGSA), approved April 16, 1936, and nothing herein contained, unless otherwise stated, shall be deemed a surrender by the Carrier of any of its rights, immunities, exemptions, limitations or exonerations or an increase of any of its responsibilities or liabilities thereunder or, as the case may be, such ordinances or statutes. The provisions of its responsibilities or liabilities under COGSA or such compulsorily applicable ordinances or statutes (except as otherwise specifically provided herein) shall govern before loading on

and after discharge from the vessel and throughout the entire time the Goods or Containers or other packages are in the care, custody and/or control of the Carrier, its agents, servants, Participating carriers or independent contractors (inclusive of all subcontractors), whether engaged by or acting for the Carrier or any other person, and during the entire time the Carrier is responsible for the Goods.

b) The Carrier shall not be liable in any capacity whatsoever for any delay, non-delivery, misdelivery or other loss or damage to or in connection with the Goods or Containers or other packages occurring at any time contemplated under subdivision a) of this Clause.

c) The Carrier shall, irrespective of which law is applicable under subdivision a) of this Clause, be entitled to the benefit of the provisions of Sections 4281 to 4287, inclusive of the Revised Statutes of the United States and amendments thereto.

d) The rights, defenses, exemptions, limitations of and exonerations from liability and immunities of whatsoever nature provided for in this Bill of Lading shall apply in any action or proceeding against the Carrier, its agents and servants and/or any Participating carrier or independent contractor, whether in tort, contract or otherwise.

## 5. THROUGH TRANSPORTATION.

When either the Place of Receipt or Place of Delivery set forth herein is an inland point or place other than the Port of Loading (Through Transportation basis), the Carrier will procure transportation to or from the sea terminal and such inland point(s) or place(s) and, notwithstanding anything in this Bill of Lading, but always subject to Clause 4 hereof, the Carrier shall be liable for loss or damage of whatsoever nature and howsoever arising to the following extent, but no further:

a) Upon proof that the loss or damage arose during a part of the Carriage herein made subject to COGSA or other legislation, as set forth in Clause 4 a) hereof, said legislation shall apply; or

b) Upon proof that the loss or damage not falling within a) above, but concerning which law of any country, state or subdivision thereof contains provisions that are compulsorily applicable and would have applied if the Merchant had made a separate and direct contract with the Carrier, a Participating carrier or independent contractor, as referred to herein, , relative to a particular stage of transport or other handling wherein the loss or damage occurred and received as evidence thereof a particular receipt or other document, then the liability of the Carrier, Participating carrier and independent contractor shall be subject to the provisions of such law.

c) If it should be determined that the Carrier bears any responsibility for loss or damage occurring during the care, custody and/or control of any Participating carrier or independent contractor, and be subject to law compulsorily applicable to their bills of

lading, receipts, tariffs and/or law applicable thereto, then the Carrier shall be entitled to all rights, defenses, immunities, exemptions, limitations of and exonerations from liability of whatsoever nature accorded under such bill of lading, receipt, tariff and/or applicable law, provided however, that nothing contained herein shall be deemed a surrender by the Carrier of any of its rights, defenses and immunities or an increase of any of its responsibilities or liabilities under this Bill of Lading, the Carrier's applicable tariff or laws applicable or relating thereto .

d) Except as herein above provided, the Carrier shall have no liability for damage to the Goods.

**6. SUBCONTRACTING: BENEFICIARIES.**

a) The Carrier shall be entitled to subcontract on any terms the whole or any part of the Carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by it in relation to the Goods or Containers or other packages or any other goods.

b) It is understood and agreed that if it should be adjudged that any person or entity other than or in addition to the Carrier is under any responsibility with respect to the Goods or any other goods, regardless of the port or place where any loss or damage shall occur and without regard to whether the Goods covered hereby or any other goods are being handled or are damaged directly or indirectly during any handling, and even if the Goods or other goods are transported on free in, stowed and/or free out terms, all exemptions, limitations of and exonerations from liability provided by law or by the Terms and Conditions hereof shall be available to all agents, servants, employees, representatives, all Participating (including inland) carriers and all stevedores, terminal operators, warehousemen, crane operators, watchmen, carpenters, ship cleaners, surveyors and all independent contractors inclusive of all persons providing any service whatsoever. In contracting for the foregoing exemptions,

limitations of and exonerations from liability, the Carrier is acting as agent and trustee for and on behalf of all persons described above, all of whom shall to this extent be deemed to be a party to the contract evidenced by this Bill of Lading, regardless for whom acting or by whom retained and paid, it being always understood that said beneficiaries are not entitled to any greater or further exemptions, limitations of or exonerations from liability than those that the Carrier has under this Bill of Lading in any given situation.

c) The Carrier undertakes to procure such services as necessary and shall have the right at its sole discretion to select any mode of land, sea or air transport and to arrange participation by other carriers to accomplish the total or any part of the Carriage from

Port of Loading to Port of Discharge or from Place of Receipt to Place of Delivery, or any combination thereof, except as may be otherwise provided herein.

d) The Merchant agrees that the Carrier shall be deemed to be a beneficiary of the actual ocean carrier's bill of lading and of all exemptions, limitations of and exonerations from liability therein contained even though the Carrier acts as agent of the Merchant in contracting with the actual ocean carrier for the Carriage of Goods. Notwithstanding, under no circumstances shall the Carrier be responsible for any damages to an extent greater than the actual ocean carrier or any beneficiaries of its bill of lading.

e) No agent or servant of the Carrier or other person or class named in subdivision b) hereof shall have power to waive or vary any of the terms hereof unless such waiver or variation is in writing and is specifically authorized or ratified in writing by an officer or director of the Carrier having actual authority to bind the Carrier to such waiver or variation.

**7. MERCHANT'S RESPONSIBILITY: DESCRIPTION OF GOODS.**

a) The description and particulars of the Goods set out on the face hereof or any description particular to other representation appearing on the Goods or documents relating thereto are furnished by the Merchant and the Merchant warrants to the Carrier that the description, particulars and any representation made including, but not limited to, weight, content, measure, quantity, quality, condition, marks, numbers and value are correct.

b) The Merchant warrants it has complied with all applicable laws, regulations and requirements of Customs, port and other authorities and shall bear and pay all duties, taxes, fines, imposts, expenses and losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering, addressing or any other particulars relative to the Goods.

c) The Merchant further warrants that the Goods are packed in a manner adequate to withstand the ordinary risks of Carriage having regard to their nature and in compliance with all laws, regulations and requirements which may be applicable.

d) No Goods which are or may become dangerous, inflammable or damaging or which are or may become liable to damage any property or person whatsoever shall be tendered to the Carrier for Carriage without the Carrier's prior express consent in writing and without the Container or other covering in which the Goods are to be transported and the Goods being distinctly marked on the outside so as to indicate the nature and character of any such articles and as to comply with all applicable laws, regulations and requirements. If any such articles are delivered to the Carrier without such written consent and marking or if in the opinion of the Carrier the articles are or are liable to become of a dangerous,

inflammable or damaging nature, the same may at any time be destroyed, disposed of, abandoned or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Charges.

e)  The Merchant and the Goods themselves shall be liable for and shall indemnify the Carrier, and the Carrier shall have a lien on the Goods for all expenses of mending, repairing, fumigating, repacking, recoopering, baling, reconditioning of the Goods and gathering of loose contents, also for expenses for repairing Containers damaged while in the possession of the Merchant, for demurrage on Containers and any payment, expense, fine, dues, duty, tax, impost, loss, damage or detention sustained or incurred by or levied upon the Carrier, Vessel, Goods, Containers or other packages and for any action or requirement of any government or governmental authority or person purporting to act under the authority thereof, seizure under legal process or attempted seizure, incorrect or insufficient marking, numbering or addressing of Containers or other packages or description of the contents, failure of the Merchant to procure consular, Board of Health or other certificates to accompany the Goods or to comply with laws or regulations or any kind imposed with respect to the Goods by the authorities at any port of place or any act or omission of the Merchant. The Carrier's lien shall survive delivery and may be enforced by private or public sale and without notice.

f)The Merchant shall be liable for all loss, damage and/or expense of any kind whatsoever, including but not limited to contamination, soiling, detention and demurrage before, during and after the Carriage of property (including but not limited to Containers) of the Carrier or any person or **Participating carrier or anyone else** (other than the Merchant) caused by the Merchant or any person acting on its behalf or for which the Merchant is otherwise responsible.

g) The Merchant shall defend, indemnify, and hold harmless the Carrier against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of this Clause 7 or from any cause in connection with the Goods for which the Carrier is not ultimately responsible.

**8) CONTAINERS.**

a) Goods may be stuffed by the Carrier in or on Containers and Goods may be stuffed with other Goods. Containers, whether stuffed by or on behalf of the Carrier or received fully stuffed , may be carried on or under deck without notice, and the Merchant expressly agrees that cargo stuffed in a Container and carried on deck is considered for all legal purposes to be cargo stowed under deck. Goods stowed in Containers on deck shall be subject to the legislation referred to in Clause 4. hereof and will contribute in General Average and receive compensation in General Average, as the case maybe.

b) The Terms and Conditions of this Bill of Lading shall govern the responsibility of the Carrier in connection with or arising out of the supply of a Container to the Merchant, whether supplied before or after the Goods are received by the Carrier or delivered to the Merchant.

c) If a Container has been stuffed by or on behalf of the Merchant the Carrier shall not be liable for loss of or damage to the Goods (i) caused by the manner in which the Container has been stuffed, (ii) caused by the unsuitability of the Goods for carriage in Containers provided that the subdivision c) shall only apply if the unsuitability or defective condition arose (a) without any want of due diligence on the part of the Carrier or (b) would have been apparent upon reasonable inspection by the Merchant at or prior to the time when the Container was stuffed and secured and prior to its locking and/or sealing.

d) Where the Carrier is instructed to provide a Container, in the absence of a written request to the contrary, the Carrier is only obliged to provide a dry container (i.e. without temperature or atmosphere control) and is not under an obligation to provide a Container of any other type or quality.

e) The Merchant shall defend, indemnify and hold harmless the Carrier against any loss, damage, claim, liability or expense whatsoever arising from one or more of the matters covered by a), b), c) or d).

## 9. CONTAINERS WITH HEATING OR REEFER APPARATUS.

Containers with temperature or atmosphere control apparatus for heating, refrigeration, ventilation or otherwise will not be furnished unless contracted for expressly in writing at time of booking and, when furnished, may entail increased Charges. In the absence of an express request, it shall be conclusively presumed that the use of a dry container is appropriate for the Goods. Merchant must provide Carrier with desired temperature range in writing at time of booking and insert same on the face side of the Bill of Lading and, where so provided, Carrier is to exercise due diligence to maintain the temperature within a reasonable range while the Containers are in its care, custody and/or control or that of any Participating carrier or independent contractor. The Carrier does not accept any responsibility for the functioning of temperature or atmosphere-controlled Containers not owned or leased by Carrier or for latent defects not discoverable by the exercise of due diligence.

Where the Container is stuffed or partially stuffed by or on behalf of the Merchant, the Merchant warrants that it has properly pre-cooled the Container, that the Goods have been properly stuffed and secured within the Container and that the temperature controls have been properly set prior to delivery of the Container to the Carrier, its agents,

servants, or any Participating carrier or independent contractor. The Merchant accepts responsibility for all damage or loss of whatsoever nature resulting from a breach of any of these warranties, including but not limited to other cargo consolidated in the Container with the Merchant's Goods or to any other cargo, property or person damaged or injured as a result thereof, and the Merchant agrees to defend, indemnify and hold the Carrier, its agents, servants, Participating carriers and independent contractors harmless from and against all claims, suits, proceedings and other consequences thereof regardless of their nature and merit.

**10.  CARRIER'S EQUIPMENT:INDEMNITY**  Whenever the Merchant, or an agent, servant, contractor or anyone else acting on its behalf, directly or indirectly, takes possession of or exercises control over a Container and/or any equipment whatsoever owned or leased by, or the use of which is provided to or by the Carrier, any Participating carrier, their agents, servants or independent contractors, the Merchant agrees to defend, indemnify and hold harmless the Carrier, any Participating carrier and independent contractors, their agents and servants, from and against any loss, damage or expense to or incurred by said Container and equipment, as well as to any third-party property, and for any injury to or death of persons arising out of the use of said Container and equipment and/or failure to timely return the Container to the Carrier.

**11. OPTION OF INSPECTION.**

The Carrier and any Participating carrier shall be entitled, but under no obligation, to open any Container at any time and to inspect the contents. If it thereupon appears that the contents or any part thereof cannot safely or properly be carried or carried further, either at all or without incurring any additional expense, the Carrier and Participating carrier may abandon the transportation thereof and/or take any measures and/or incur any reasonable additional expenses to continue the Carriage or to store the Goods, which storage shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any reasonable additional Charges and consequences so incurred.

**12. DECK CARGO.**

Deck cargo (except that carried in Containers on deck) and live animals are received and carried solely at Merchant's risk (including accident or mortality of animals), and the Carrier will not in any event be liable for any loss or damage for or from which it is exempt, immune or exonerated by applicable law, or from any other cause whatsoever not due to the fault of the Carrier, any warranty of seaworthiness in the premises being hereby waived, and the burden of proving liability being in all respects upon the

Merchant. Except as may be otherwise provided herein, such shipments shall be deemed Goods and shall be subject to all Terms and Conditions of this Bill of Lading.

## 13. METHODS AND ROUTES OF TRANSPORTATION; LIBERTIES.

With respect to the Goods or Containers or other packages, the Carrier may at any time and without notice to the Merchant:

a) use any means of transport (water, land and/or air) or storage whatsoever;

b) forward, transship or retain on board or carry on another vessel or conveyance or by any other means of transport other than that named on the reverse side hereof;

c) carry Goods on or under deck at its option;

d) proceed by any route in its sole and absolute discretion and whether the nearest, most direct, customary or advertised route in or out of geographical rotation;

e) proceed to or stay at any place whatsoever once or more often and in any order or omit calling at any port, whether scheduled or not;

f) store, vanned or devanned, at any place whatsoever, ashore or afloat, in the open or covered;

g) proceed with or without pilots;

h)  carry livestock, contraband, explosives, munitions, warlike stores, dangerous or hazardous goods or goods of any and all kinds;

i) drydock or stop at any unscheduled or unadvertised port for bunkers, repairs or for any purpose whatsoever;

j) discharge and require the Merchant to take delivery, vanned or devanned;

k) comply with any orders, directions or recommendations given by any government or authority or by any person or body acting or purporting to act with the authority of any government or authority or having under the terms of the insurance on the vessel or other conveyance employed by the Carrier the right to give such orders, directions or recommendations;

l) take any other steps or precautions as may appear reasonable to the Carrier under the circumstances. The liberties set out in subdivisions a) through l) may be invoked for any purpose whatsoever even if not connected with the Carriage covered by this Bill of Lading, and any action taken or omitted to be taken, and any delay arising therefrom, shall be deemed to be within the contractual and contemplated Carriage and not be an unreasonable deviation. In no circumstance whatsoever shall the Carrier be liable for direct, indirect or consequential loss or damage caused by delay.

## 14. MATTERS AFFECTING PERFORMANCE.

In any situation whatsoever and wheresoever occurring and whether existing or anticipated before commencement of, during or after the Carriage, which in the judgment of the Carrier

is likely to give rise to any hindrance, risk, capture, seizure, detention, damage, delay, difficulty or disadvantage or loss to the Carrier or any part of the Goods, or make it unsafe, imprudent, impracticable or unlawful for any reason to receive, keep, load, carry or discharge them or any part of them or commence or continue the Carriage or disembark passengers at the port of Discharge or at the usual or intended place of discharge or delivery, or to give rise to danger, delay or difficulty of whatsoever nature in proceeding by the usual or intended route, the Carrier and any Participating carrier, without notice to the Merchant, may decline to receive, keep, load, carry or discharge the Goods, or may discharge the Goods and may require the Merchant to take delivery and, upon failure to do so, may warehouse them at the risk and expense of the Merchant and Goods or may forward or transship them as provided in this Bill of Lading, or the Carrier may retain the Goods on board until the return of the Vessel to the Port of Loading or to the Port of Discharge or any other point or until such time as the Carrier deems advisable and thereafter discharge them at any place whatsoever. In such event, as herein provided, such shall be at the risk and expense of the Merchant and Goods, and such action shall constitute complete delivery and performance under this contract, and the Carrier shall be free from any further responsibility. For any service rendered as herein above provided or for any delay or expense to the Carrier or Vessel caused as a result thereof, the Carrier shall, in addition to full Charges, be entitled to reasonable extra compensation, and shall have a lien on the Goods for same. Notice of disposition of the Goods shall be sent to the Merchant named in this Bill of Lading within a reasonable time thereafter.

All actions taken by the Carrier hereunder shall be deemed to be within the contractual and contemplated Carriage and not be an unreasonable deviation.

## 15. DELIVERY.

If delivery of the Goods or Containers or other packages or any part thereof is not taken by the Merchant when and where and at such time and place as the Carrier is entitled to have the Merchant take delivery, they shall be considered to have been delivered to the Merchant, and the Carrier may, at its option, subject to its lien and without notice, elect to have same remain where they are or sent to a warehouse or other place, containerized or devanned, always at the risk and expense of the Merchant and Goods.

If the Goods are stuffed within a Container owned or leased by the Carrier, the Carrier shall be entitled to devan the contents of any such Container, whereupon the Goods shall be considered to have been delivered to the Merchant and the Carrier may at its option, subject to its lien and without notice, elect to have same remain where they are or sent to a warehouse or other place, always at the risk and expense of the Merchant and Goods.

## 16. CHARGES, INCLUDING FREIGHT.

At ports or places where by local law, authorities or custom, the Carrier is required to discharge cargo to lighters or other craft or where it has been so agreed or where wharves are not available which the Vessel can get to, be at, lie at, or leave, always safely afloat, or where conditions prevailing at the time render discharge at a wharf dangerous, imprudent, or likely to delay the Vessel, the Merchant shall promptly furnish lighters or other craft to take delivery alongside the Vessel at the risk and expense of the Goods. If the Merchant fails to provide such lighters or other craft, Carrier, acting solely as agent for the Merchant, may engage such lighters or other craft at the risk and expense of the Merchant and Goods. Discharge of the Goods into such lighters or other craft shall constitute proper delivery, and any further responsibility of Carrier with respect to the Goods shall thereupon terminate.

The Charges payable hereunder have been calculated on the basis of particulars furnished by or on behalf of the Merchant. The Carrier shall, at any time, be entitled to inspect, reweigh, remeasure or revalue the contents and, if any of the particulars furnished by the Merchant are found to be incorrect, the Charges shall be adjusted accordingly and the Merchant shall be responsible to pay the correct Charges and all expenses incurred by the Carrier in checking said particulars or any of them.

Charges shall be deemed earned on acceptance of the Goods or Containers or other packages for shipment by the Carrier and shall be paid by the Merchant in full, without any offset, counterclaim or deduction, cargo and/or vessel or other conveyance lost, or not lost, and shall be non-returnable in any event.

The Merchant shall remain responsible for all Charges, regardless whether the Bill of Lading states, in words or symbols, that it is "Prepaid" or "Collect."

In arranging for any services with respect to the Goods, the Carrier shall be considered the exclusive agent of the Merchant for all purposes, and any payment of Charges to other than the carrier shall not, in any event, be considered payment to the Carrier.

The Merchant shall defend, indemnify and hold the Carrier, any Participating carrier, independent contractor, their agents and servants, harmless from and against all liability, loss damage and expense which may be sustained or incurred relative to the above.

## 17. CARRIER'S LIEN.

The Carrier shall have a lien on the Goods, inclusive of any Container owned or leased by the Merchant and on all equipment and appurtenances thereto, as well as on any Charges due any other person, and on any documents relating thereto, which lien shall survive delivery, for all sums due under this contract or any other contract or undertaking to which the Merchant was party or otherwise involved, including, but not limited to, General Average contributions, salvage and the cost of recovering such sums,  inclusive

of attorneys' fees. Such lien may be enforced by the Carrier by public or private sale at the expense of and without notice to the Merchant.

The Merchant agrees to defend, indemnify and hold the Carrier, any Participating Carrier, independent contractor, their agents and servants, harmless from and against all liability, loss, damage or expense which may be sustained or incurred by the Carrier relative to the above and the Merchant agrees to submit to the jurisdiction of any court, tribunal or other body before whom the Carrier may be brought, whether said proceeding is of a civil or criminal nature.

## 18. RUST.

It is agreed that superficial rust, oxidation or any like condition due to moisture, is not a condition of damage but is inherent to the nature of the Goods. Acknowledgement of receipt of the Goods in apparent good order and condition is not a representation that such conditions of rust, oxidation or the like did not exist on receipt.

## 19. GENERAL AVERAGE.

a)  If General Average is declared, it shall be adjusted according to the York/Antwerp Rules of 1994 and all subsequent amendments thereto from time to time made, at any place at the option of any person entitled to declare General Average, and the Amended Jason Clause as approved by BIMCO is to be considered as incorporated herein, and the Merchant shall provide such security as may be required in this connection.

b)  Notwithstanding a) above, the Merchant shall defend, indemnify and hold harmless the Carrier and any Participating carrier, their agents and servants, in respect of any claim (and any expense arising therefrom) of a General Average and/or salvage nature which may be made against the Carrier and/or any Participating carrier and shall provide such security as may be required by the Carrier in this connection.

c)  Neither the Carrier nor any Participating carrier shall be under any obligation to take any steps whatsoever to post security for General Average or to collect security for General Average contributions due from or to the Merchant.

## 20. LIMITATION OF LIABILITY.

Except as otherwise provided in this Clause or elsewhere in this Bill of Lading, in case of any loss or damage to or in connection with cargo exceeding in actual value the equivalent of $500 lawful money of the United States, per package, or in case of cargo not shipped in packages, per shipping unit, the value of the cargo shall be deemed to be $500 per package or per shipping unit. The Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of

partial loss or damage, unless the nature of the cargo and valuation higher than $500 per package or per shipping unit shall have been declared by the Merchant before shipment and inserted in this Bill of Lading, and extra freight paid if required. In such case, if the actual value of the cargo per package or per shipping unit shall exceed such declared value, the value shall nevertheless be deemed to be declared value and the

Carrier's liability, if any, shall not exceed the declared value.

The words "shipping unit" shall mean each physical unit (e.g. container, bundle, pallet, etc.) or piece of cargo not shipped in a package, including articles or things of any description whatsoever, except cargo shipped in bulk, and irrespective of the weight or measurement unit employed in calculating freight and related charges.

As to cargo shipped in bulk, the limitation applicable thereto shall be the limitation provided in Section 1304(5) of COGSA, or such other legislation, convention or law as may be applicable, and in no event shall anything herein be construed as a waiver of limitation as to cargo shipped in bulk.

Where a Container is not stuffed by or on behalf of the Carrier or the parties characterize the Container as a package or a lump sum freight is assessed, in any of these events, each individual such Container, including in each instance its contents, shall be deemed a single package and Carrier's liability limited to $500 with respect to each such package, except as otherwise provided in this Clause or elsewhere in this Bill of Lading with respect to each such package. In the event this provision should be held invalid during that period in which compulsory legislation shall apply of its own force and effect, such as during the tackle-to-tackle period, it shall nevertheless apply during all non-compulsory periods such as, but not limited to, all periods prior to loading and subsequent to discharge from the Vessel for which the Carrier remains responsible.

Where compulsorily applicable legislation provides a limitation less than $500 per package or shipping unit, such lesser limitation shall apply and nothing herein contained shall be construed as a waiver of a limitation less than $500.

Further, where a lesser monetary limitation is applicable, such as during handling by a Participating Carrier or Independent Contractor and damage occurs during its or their period of care, custody, control and/or responsibility, the Carrier shall be entitled to avail itself of such lesser limitation.

**21. LIMITATION OF LIABILITY FOR INLAND TRANSPORTATION**
In the event the Carmack Amendment or other legislation governing transport from the Place of Receipt to the Port of Loading or from the Port of Discharge to the Place of Delivery is compulsorily applicable during such transport and renders the legislation referred to in Clause 4. a) hereof inapplicable, the Carrier's liability shall be limited to

$.50 per lb. of the Goods shipped unless the Merchant, before shipment, shall have declared in writing the nature of the Goods and their true value, inserted it on the face side of the Bill of Lading and paid extra freight, if required.

In all such instances, the Merchant has 9 months from the date of delivery or date delivery should have been made to file a written claim against the Carrier, which claim must state the nature of the Goods, the type loss or damage sustained and include a specified or determinable amount of money. A claim is not considered "filed" until it has been delivered to and received by the Carrier.

In the event compulsorily applicable law provides for a greater period of time to file a claim or civil action, such period(s) shall govern.

## 22. NOTICE OF CLAIM; TIME FOR SUIT.

As to any loss or damage presumed to have occurred during the Carrier's period of responsibility, the Carrier must be notified in writing of any such loss or damage or claim before or at the time of discharge/removal of the Goods by the Merchant or, if the loss or damage is not then apparent, within 3 consecutive days after discharge/delivery or the date when the Goods should have been discharged/delivered or the date when the Goods should have been delivered. If not so notified, discharge, removal or delivery, depending upon the law applicable, shall be prima facie evidence of discharge/delivery in good order by the Carrier of such Goods.

In any event, the Carrier shall be discharged from all liability of whatsoever nature unless suit is brought within 1 year after delivery of the Goods or the date when the Goods should have been delivered, provided, however, that if any claim should arise during a part of the transport which is subject by applicable law and/or tariff and/or contract to a shorter period for notice of claim or commencement of suit, any liability whatsoever of the Carrier shall cease unless proper claim is made in writing and suit is brought within such shorter period.

Suit shall not be deemed "brought" unless jurisdiction is obtained over the Carrier by service of process or by an agreement to appear. In the event this provision is held invalid during that period in which compulsory legislation shall apply of its own force and effect, such as during the tackle-to-tackle period, it shall nevertheless apply during all non-compulsory periods during which the Carrier remains responsible for the Goods.

## 23. ACTUAL PHYSICAL DAMAGES REQUIREMENT

Any claim for damages to the Goods require proof of actual physical damage to the Goods. Damages to the external packaging, or exposure of the Goods to the environment alone, are not considered as physical damages to the Goods.

## 24.JURISDICTION

All disputes of whatsoever nature under or in connection with this Bill of Lading shall be determined by the United States District Court for the Southern District of New York to the exclusion of any other court, PROVIDED ALWAYS that the Carrier may in its absolute

and sole discretion invoke or voluntarily submit to the jurisdiction of any other court which, but for the terms of this Bill of Lading, could properly assume jurisdiction to hear and determine such disputes, but such shall not constitute a waiver of the terms of this provision in any other instance.

## 25.NON-WAIVER AND SEPARABILITY.

Nothing in this Bill of Lading shall operate to deprive the Carrier of any statutory protection or any defense, immunity, exemption, limitation or exoneration from liability contained in the laws of the United States, or of any other country whose laws may be applicable. The Terms and Conditions of this Bill of Lading (including all of the terms and conditions of the carrier's applicable tariff or tariffs, incorporated herein by virtue of Clause 2 above) shall be separable, and if any part or term hereof shall be held invalid, such holding shall not affect the validity or enforceability of any other part or term hereof.